# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY MONEYHAM, | : | No. 3:16cv1311 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| DAVID J. EBBERT, | : | |
| Respondent | : | |

## MEMORANDUM

Before the court for disposition is the report and recommendation ("R&R") of Magistrate Judge Joseph F. Saporito, Jr., which suggests denial of Anthony Moneyham's ("petitioner" or "Moneyham") petition for a writ of habeas corpus filed under 28 U.S.C. § 2241. Petitioner has filed objections to the R&R, and the matter is ripe for disposition.

**Background[1]**

"Moneyham is a federal inmate serving a 128-month prison sentence for distribution of heroin. He is expected to complete his active prison term in May 2019, at which time he will commence a 60-month period of supervised release.

---

[1] Neither party has objected to the magistrate judge's recitation of the background facts. Thus we quote them here in the "Background" section with only minor stylistic and editing changes. (See Doc. 11, R&R at 1-5). Defendant does disagree with some of these facts, involving the security camera footage, and that disagreement will be addressed below.

In his petition, Moneyham challenges a disciplinary hearing officer's decision finding him guilty of misconduct and sanctioning him with the disallowance of good conduct time.

On January 28, 2014, F.L. Aguilar, a vocational training instructor at USP Victorville, in California, was explaining the legal lay-in process to Moneyham. According to an incident report prepared by Aguilar, Moneyham became verbally aggressive, stating: "I'm a grown man[.] I don't need to fuckin' check-in with anybody." Aguilar instructed Moneyham to lower his voice, and Moneyham responded by taking a defensive posture with clinched fist and then stepping toward Aguilar. Aguilar ordered Moneyham out of the Education Department and into the corridor. After conducting a pat-down search of Moneyham, Aguilar notified the Operations Lieutenant and escorted Moneyham through a secure corridor without further incident.

Aguilar subsequently prepared Incident Report No. 2542730, charging Moneyham with "threatening another with bodily harm" (code 203), "interfering with a staff member in performance of duties" (code 298), and "refusing to work or accept a program assignment" (code 306). Moneyham received a copy of the incident report later that same day. In response, he stated "No comment" to the investigating officer.

Approximately two days later on January 30, 2014, Moneyham received two written notices: "Notice of Disciplinary Hearing Before the (DHO)" and "Inmate Rights at Discipline Hearing." Moneyham signed to verify his receipt of the notices, and to confirm that he did not wish to have a staff representative or to call any witnesses to testify on his behalf at the disciplinary hearing.

On February 19, 2014, a hearing was held before a disciplinary hearing officer ("DHO"). At the hearing, the DHO confirmed that Moneyham had received advance written notice of the charges against him, that he had been advised of his rights with respect to the hearing, and that he had waived his right to a staff representative or to call witnesses on his behalf.

Moneyham testified at the hearing in his own defense, stating: "I didn't threaten the man at all. I never balled my fists. I did tell him I didn't care what the computer said. Yeah, I cussed at the man." Moneyham further stated that he had been called into the Education Department in connection with a different incident report, No. 2492868, which he provided to the DHO. Moneyham then stated: "I don't disrespect women. I wrote a discrimination complaint against Aguilar and Guiterrez. I sent Lt. Harlien a cop-out asking him to preserve video."

Based on Moneyham's statement regarding video footage, the DHO contacted Lieutenant Harlien by telephone. Harlien advised the DHO: "I don't have a cop-out from him. It's too late. That video is no longer available."

3

Upon consideration of all the evidence and testimony before him, the DHO concluded that, based on the greater weight of the evidence, Moneyham committed the acts of threatening (code 203) and insolence (code 312) as charged, but expunged the charge of refusing to accept an assignment (code 306). In addition to Moneyham's testimony and the incident report itself, the DHO considered supporting memorandums provided by two staff witnesses who were present during the incident, as well as Moneyham's prior disciplinary history. The DHO sanctioned Moneyham with disallowance of 27 days of good conduct time, 30 days of disciplinary segregation, 4 months loss of commissary privileges, and 3 months loss of email/TRULINCS privileges. The written decision advised Moneyham of his appeal rights, and a copy was delivered to him on March 14, 2014.

Moneyham exhausted his administrative remedies, unsuccessfully appealing this DHO decision to the regional and central Bureau of Prisons offices. He filed the instant federal habeas petition on June 27, 2016. The respondent filed his answer to the petition on August 17, 2016." (Doc. 11, R&R at 1-5). The Magistrate Judge filed his R&R on April 10, 2018. The petitioner filed objections on June 18, 2018, bringing the case to its present posture.

**Jurisdiction**

Because this case is brought pursuant to 28 U.S.C. § 2241, the court has jurisdiction under 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Standard of review**

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report against which objections are made. 28 U.S.C. § 636(b)(1)(c); see also Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983). The court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

In deciding whether to adopt the portions of the report and recommendation which is not objected to, we must determine if a review of the record evidences plain error or manifest injustice. FED. R. CIV. P. 72(b) 1983 Advisory Committee Notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record to accept the recommendation"); see also 28 U.S.C. § 636(b)(1); Sullivan v. Cuyler, 723 F.2d 1077, 1085 (3d Cir. 1983).

**Discussion**

As explained above, petitioner complains of a lack of due process at his disciplinary hearing. Because prison disciplinary proceedings are not part of the criminal prosecution, the full panoply of rights due to a criminal defendant do not apply. Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992) (citing to Wolff v. McDonnell, 418 U.S. 339, 556 (1974)).

> Instead, due process prohibits the deprivation of a prisoner's liberty interest at a disciplinary hearing unless the prisoner is given the following three rights: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.
> In addition, a disciplinary decision implicating a prisoner's liberty interest must be supported by at least some evidence.

Id. (internal quotation marks and citations omitted).

Moneyham's petition argues that the DHO denied his right to present documentary evidence, his right to call witnesses, and his right to an impartial decision maker. He also contends that the incident report underlying the disciplinary proceedings itself was an abuse of the disciplinary process. The R&R suggests denial of all of these claims and suggests that petitioner's due process rights were not violated.

The petitioner's objections are aimed primarily at two issues: the presentation of documentary evidence, that is, security camera footage, and the impartiality of the decision maker. We will address these issues separately.[2]

**1. Security tape**

Defendant argues that he requested retention of security camera video footage, which may have captured the incident, for use at his disciplinary hearing. "Cop out" is the term used by the prison for such a request. The DHO's report states that the person in charge of the footage indicated he did not have a "cop out" form from the petitioner and that it was too late - the video was no longer available. (Doc. 7-1, at 15).

The petitioner argues that this makes it seem as if he never filed a "cop out" request. According to the petitioner, the person in charge of the video indicated at the hearing (via telephone) that he had just returned from vacation and had not checked his mail but it would be too late to preserve the evidence. (Doc. 14, Objections at 2). The DHO's report makes no mention of anyone being on vacation, it merely states that the relevant officer does not have the cop out form from petitioner and it is too late to preserve the evidence. (Doc. 7-1 at 16). The report also indicates no video was ever used during the investigation or

---

[2] We find no clear error or manifest injustice with the other issues addressed in the R&R. Thus, we will adopt the unobjected to portions of the R&R without further analysis.

7

mentioned by the unit disciplinary committee. (Doc. 7-1, at 16). Whether the cop out form was never submitted or whether it was submitted and the appropriate person did not receive it because he was on vacation is irrelevant to petitioner's due process claim. The relevant query is whether the DHO prevented him from presenting evidence.

We find that the DHO did not violate petitioner's due process rights with regard to the security camera footage. The DHO protected petitioner's right to present evidence at the hearing by telephoning the person in charge of security camera footage. The DHO was informed, however, that the footage did not exist. Accordingly, we find no merit to petitioner's argument.

## 2. **Impartiality of the decision maker**

The second argument raised by the petitioner is that the decision maker at the disciplinary hearing was not impartial. Petitioner's argument is not convincing.

The law provides: "[T]he requirement of an impartial tribunal prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary body." Meyers v. Aldredge, 492 F.2d 296, 306 (3d Cir. 1974).

Here, nothing indicates such a personal or substantial involvement on the part of the DHO. Petitioner's argument generally is that the DHO demonstrated partiality because the evidence did not support a finding that he threatened another with bodily harm. We disagree.

As noted in the DHO's report, he relied upon the reporting officer's statement, which included that petitioner became verbally aggressive, used foul language, took a defensive posture and clenched his fist and stepped in the direction of the reporting officer when he was instructed to lower his voice. (Doc. 7-1 at 15).

Petitioner fails to point to any evidence that calls into question the impartiality of the DHO. The petitioner may be disappointed that the DHO did not find his testimony more credible. Due process does not require that his statement be believed by the DHO, but merely that he receive a fair hearing. He was able to present his side of the story, the DHO had to make credibility determinations as to who to believe. Thus, we find petitioner's argument unconvincing.

**Conclusion**

For all of these reasons, the petitioner's objections to the R&R will be denied. The report and recommendation will be adopted, and the petition for habeas corpus will be denied. An appropriate order follows.

**Dated: August 24, 2018**         **s/ James M. Munley**
                                    **JUDGE JAMES M. MUNLEY**
                                    **United States District Court**